UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLEARWATER INSURANCE COMPANY,

                    Plaintiff,                          CASE NUMBER: 09-10550

v.                                                      HON. MARIANNE O. BATTANI

AMERISURE INSURANCE COMPANY,

                    Defendant.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Defendant Amerisure Insurance Company's (Amerisure) Rule

56(b) Motion for Summary Judgment (Doc. No. 10), and Plaintiff Clearwater Insurance

Company's (Clearwater) Motion for Summary Judgment (Doc. No. 11).  The Court heard

oral argument on March 17, 2010, and at the conclusion of the hearing, took this matter

under advisement.  For the reasons that follow, the Court **GRANTS** Plaintiff's motion and

**DENIES** Defendant's motion.

**I.  STATEMENT OF FACTS**

Clearwater filed its complaint in this matter in February 2009, seeking a declaratory

judgment that Defendant Amerisure Insurance Company is solely liable to provide personal

injury protection (PIP) benefits to Shaun Shimon (Doc. 1).  There is no dispute that

Amerisure's policy provides coverage.  The parties disagree as to whether Clearwater

likewise is required to provide benefits to Shimon under the No-Fault Act and if so, whether

exclusions in the Clearwater policy apply.  The facts giving rise to the dispute follow.

The parties in this case both issued policies insuring a 1999 Freightliner semi-tractor, VIN #1FUYSDZB4XLA41633, owned by Haythem Tomas. In October 2006, Shaun Shimon, a licensed commercial driver, met Tomas, and the two planned to entered into a partnership. On October 9, 2006, Shimon drove the tractor to Grand Rapids to discuss a potential lease agreement with A&S Lines, LLC (A&S or A&S Lines). Shimon filled out the necessary paperwork, completed a medical exam, and a drug screen. A&S Lines approved Shimon to drive; however, because Shimon did not own the tractor, Tomas signed the lease agreement with A&S Lines. Pursuant to a Vehicle Lease Agreement, the lease commenced on October 9, 2006, and was effective for not less than 30 days, and stated that it shall "[b]e continued until canceled." Pl.'s Ex. 3, p.2. Tomas then cancelled a prior lease agreement he had with Metro Trucking.

Pursuant to the lease agreement A&S paid 88% of the revenue per load to Tomas. A&S Lines supplied no equipment to Shimon, but did provide a fuel card to Shimon. The fuel costs were deducted from Tomas' share of the revenue. Tomas was solely responsible for all mechanical repairs for the 1999 freightliner.

While he was en route to Texas, Shimon experienced problems with the truck's steering. Tomas instructed him to take the truck to a repair facility in Arkansas, where some repairs were made. Tomas did not authorize replacement of the truck's front tire; instead, Tomas instructed Shimon to replace the tire when he returned to Michigan. Consequently, Shimon asked A&S Lines for a load to return him to Michigan. The second load required transport from Texas to Ohio. Thereafter, Shimon picked up a load to deliver to Warren, Michigan. He arrived in Warren the day before his accident. Because the delivery site was closed when he arrived, Shimon was instructed to return the following day.

Shimon parked the loaded trailer in a nearby parking lot overnight, returned the following morning and made the delivery. Shimon informed the A&S dispatcher that he had dropped the load and did not want to take another load until he replaced the front tire of the truck and spent a few days at home.

On October 27, 2006, Shimon lost control of the 1999 Freightliner, collided with a passing car, and struck a median wall. On the date of the accident both insurance policies were in effect: a truck policy issued by Amerisure to A&S Lines, LLC, policy # CA 2028725010006; and a nontrucking use policy issued by Clearwater to Tomas, policy # CBA41001C.

Shimon, who had no insurance coverage, submitted a claim for Personal Injury Protection benefits pursuant to the Michigan No-Fault Law, Mich. Comp. Laws § 500.3101 et seq. Clearwater and Amerisure disagree as to whether Clearwater is liable for payment of the benefits.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, the nonmoving party "cannot rely merely on allegations

but must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).

## III. ANALYSIS

This matter is before the Court on diversity of citizenship, 28 U.S.C. § 1332, and Michigan law governs. Accident victims must generally look first to their own insurance coverage or that of a spouse or resident relative for no-fault benefits. MICH. COMP. LAWS § 500.3114(1); Michigan Mut. Ins. Co. v. Farm Bureau Ins. Group, 455 N.W.2d 352, 354 (Mich. Ct. App. 1990). Where more than one insurer is potentially responsible for payment of PIP benefits, the statute provides an order of priority. The insurer that qualifies under the highest priority section is responsible. Because A&S meets the statutory definition of owner, the Court must determine whether Tomas also qualifies.

### A. Was Tomas an owner or registrant of the 1999 Freightliner within the meaning of the No-Fault Act?

Here, Shimon had no insurance, and the parties agree that the governing priority provision is found at § 500.3114(a). It reads as follows:

> (4) Except as provided in subsections (1) to (3), a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.

MICH. COMP. LAWS § 500.3114(4)(a).

The statute defines the "owner" of a vehicle as including "a person who holds the legal title to the vehicle, other than a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle pursuant to a lease providing for the use of

4

the motor vehicle by the lessee for a period that is greater than 30 days." MICH. COMP. LAWS § 500.3101(2)(g)(ii).

Amerisure contends that Tomas is an owner; Clearwater asserts that he is not. The question of ownership is a question of fact to be decided by the fact finder. Botsford Gen. Hosp. v. Citizens Ins. Co., 489 N.W.2d 137, 141 (Mich. Ct. App. 1992). The evidence in this case shows that for purposes of the Act, the Court may not rule as a matter of law in favor of either party on Tomas' status.

At the outset, the Court observes that more than one person can be considered the owner of a vehicle for purposes of § 500.3101(2)(g). In McCloskey v. Klair, 2006 WL 3825270 (E.D. Mich. Dec. 27, 2006) (construing the Civil Liability of Owners and Operators of Motor Vehicles), the court considered whether the defendant, who owned one tractor-trailer, was shielded from liability because he was a person engaged in the business of leasing motor vehicles. After reviewing the relevant case law, the court noted there is no requirement that a single lease, standing alone, qualifies a lessor as "engaged in the business of leasing motor vehicles." Id. See also Black v. Joe Panian Chevrolet, Inc., 608 N.W.2d 89, 93 (Mich. Ct. App. 2000) (declining to limit the reach of this statutory provision to firms whose core business is car or truck rental). Compare Ball v. Chrysler Corp., 570 N.W.2d 481, 483 (Mich. Ct. App. 1997) (observing that "[n]othing in the statute requires that the lessor's primary business be retail leasing"). This Court agrees. If mere status as lessor satisfied the statute, the language "engaged in the business of leasing motor vehicles" would be unnecessary. The Court declines to read the phrase out of the statute.

Here, at the time of the accident, Tomas owned a single truck, which was leased by A&S Lines. Tomas testified that he and Shimon had an informal partnership agreement,

5

pursuant to which Shimon drove the truck to earn money to buy and interest in it.  This agreement is consistent with Tomas' prior ownership of a truck, which he financed on behalf of his cousin.  Def.'s Ex. K. At 15. Moreover, during the relevant time frame, Tomas worked in maintenance at a Holiday Inn.  Def.'s Ex. N at 35, 46.  Tomas testified at his deposition that he never considered himself to be in the business of leasing vehicles.  Id. at 7.  Nor did he ever intend to be in the business of leasing motor vehicles.  Def.'s Ex. N at 48.  Although this evidence favors a finding that Tomas was not engaged in the business of leasing motor vehicles, and therefore is an owner under the statute, evidence to the contrary also has been presented.  According to Tomas, he did not know how to drive the Freightliner, and had no license to do so.  Pl.'s Ex. 9 at 25; Pl.'s Ex. 10 at 46.  Further, Tomas filed Articles of Incorporation for Angela Transportation in January 2006, "to let the tuck work to do business."  Pl.'s Ex. 6, Pl.'s Ex. 9 at 20.

Because the ownership question constitutes a material factual dispute requiring resolution in order to determine the priority issue, the Court cannot hold, as a matter of law, that Tomas meets the statutory definition of owner, and cannot find that Tomas and A&S Lines fall within the same level of priority for purposes of PIP benefits.  In order to resolve the summary judgment motions, the Court nevertheless will address whether the Clearwater policy would provide coverage if Tomas were deemed an owner.

**B. Applicability of Policy Exclusions**

In the event Tomas is found to be an owner, the parties dispute whether either of two exclusions in the Clearwater policy apply.  Because an insurance policy is merely a contract, Auto-Owners Ins. Co. v. Churchman, 489 N.W.2d 431, 433-34 (Mich. 1992), the Court's role here is simply to determine what the parties' agreement is and enforce it."

Fragner v. American Cmty Mut. Ins. Co., 502 N.W.2d 350, 353 (Mich. Ct. App. 1993).

Here, Clearwater was "free to define or limit the scope of coverage as long as the policy

language fairly leads to only one reasonable interpretation and is not in contravention of

public policy." Heniser v. Frankenmuth Mutual Ins., 534 N.W.2d 502, 505 (Mich. 1995).

Nevertheless, when a court is construing an exclusionary clause, it must "be strictly

construed against the insurer. " Zurich-American Ins. Co. v. Amerisure Ins. Co., 547 N.W.

2d 52, 55 (Mich. Ct. App. 1996).  With these standards in mind, the Court looks to the

language in the exclusions.

**1.  Did the accident occur while the 1999 Freightliner was being operated "in the business of A&S Lines?**

The Clearwater Policy issued to Tomas included a "bobtail exclusion".  Bobtail

exclusions insure a tractor and driver of a truck when it is operated without cargo or a

trailer.

Endorsement CA 23 10 03 94 (Pl.'s Ex. 12A, p. 0028), reads as follows:

> Michigan Personal Injury and Property Protection coverages do not apply to bodily injury or property damage resulting from the **operation, maintenance or use of the covered auto in the business of anyone to whom it is leased or rented if the lessee has** Michigan Personal Injury and Property protection coverages on the auto.

There is no dispute that the covered auto, the Freightliner, was under lease to A&S Lines

or that Amerisure provided PIP coverage for the Freightliner.  The issue is whether the

vehicle was being operated in the business of A&S Lines at that time of the accident.

When the accident occurred, Shimon was driving the vehicle to a repair shop to have

a tire installed.  Clearwater asserts that because the accident occurred during the term of

7

the lease, which commenced on October 9, 2006, and was effective for not less than 30 days, and continued until canceled, the exclusion applies. See Pl.s Ex. 3, p.2.

In Zurich-American Ins., 547 N.W. 2d at 55, the state court of appeals held that a similar bobtail exclusion did not apply when an unloaded tractor was involved in an accident while traveling to a repair facility. In that case, K&R Trucking owned a tractor, and had a bobtail policy issued by Zurich. K&R had leased the truck to Cimarron Express, Inc., which also had an insurance policy issued by the defendant. The bobtail policy limited liability coverage where "the automobile is being used in the business of any person or organization to whom the automobile is rented." Id. At the time of the accident, a K&R employee was driving the tractor to a facility for repair. The state court of appeals concluded that because the tractor was not being used to haul any freight by Cimarron at the time of the accident, the bobtail exclusion did not apply.

> This exclusion applies if [the driver] was using the tractor in Cimarron's business at the time of the accident. Cimarron's business consists of the interstate hauling of freight. It is undisputed that the tractor was not being used to haul any freight by Cimarron at the time of the accident. Indeed, the tractor was not even attached to any trailer. As noted, K&R's employee. . .was driving the tractor to a repair facility to undergo repairs. On these facts, the trial court correctly ruled that the tractor was not being used in Cimarron's business at the time of the accident. Hence, the exclusion does not apply.

Id. at 56.

Clearwater's efforts to distinguish this case are unavailing. Michigan law governs the interpretation of exclusions, and here, Shimon was not using the vehicle in the business of A&S Lines at the time he was driving it to a repair facility. The trailer only contained the tire Shimon was going to have installed. The fact that the trailer was attached does not distinguish these facts from the governing case law. Although the trailer was not attached

in the accident addressed in <u>Zurich</u>, the absence of freight was dispositive to the outcome in <u>Zurich</u>, not the absence of a trailer.

Next, Clearwater asserts that the lease, which gave A&S exclusive control over the operation of the semi-tractor, when read with the federal regulations, which oblige the lessee, in this case A&S Lines, to maintain the vehicle in proper working order, regardless of the lease agreement itself, leads to one conclusion:   the accident occurred while the Freightliner was being operated in the business of A&S Lines, and the bobtail provision precludes coverage.

The Court disagrees.  Clearwater's reliance on the federal regulations as a basis for governing the allocation of liability among insurance carriers is misplaced.  <u>See</u> <u>e.g.</u> <u>Empire Fire and Marine Ins. Co. v. Guar. Nat'l Ins. Co.</u>, 868 F.2d 357, 361 (10th Cir. 1989) (acknowledging various approaches to the impact of the regulations).  The existence of applicable federal regulations does not undermine the holding in <u>Zurich</u> because the lessor likewise was a carrier operating under an interstate commerce commission permit.

Finally, Clearwater maintains that the exclusion in its policy is considerably broader that the one in <u>Zurich</u>.  In contrast to the <u>Zurich</u> exclusion, which did not refer specifically to maintenance, the Clearwater exclusion explicitly states that PIP coverage "does not apply to bodily injury or property damage resulting from the maintenance of the covered auto. . . .   This distinction does not alter the analysis.  The maintenance of the covered vehicle was not being done in the business of A&S Lines– it occurred at a time when the Freightliner carried no freight on behalf of A&S.  Accordingly, the Court finds the exclusion is inapplicable.

## 2. Is the second exclusion ambiguous?

The second exclusion, Endorsement CA 23 11 03 94 (Ex. 12A at 0029), provides that PIP coverage "does not apply to a covered auto hired or borrowed from [Tomas] by any trucker if the trucker has Michigan Personal Injury and Property Protection coverages on the auto." Id. The policy defines a trucker as "any person or organization engaged in the business of transporting property by auto for hire." Pl.'s Ex. 12, Endorsement # 4.

From Clearwater's perspective, the language clearly excludes coverage for Shimon's PIP claim. A&S is a trucker, and the tractor was under lease to A&S Lines at the time of the accident. Notably, this exclusion does not require that the covered vehicle be used or operated "in the business of the lessee" at the time of the accident. Nor does the exclusion require the injured individual to have a policy. The only criteria for exclusion of the Freightliner from coverage is that the vehicle be hired or borrowed from the insured, by a trucker, who has PIP coverage on the vehicle. The criteria is satisfied.

The Court rejects Amerisure's contention that the language is ambiguous, and therefore, must be construed against the drafter of the contract. Lichnovsky v. Ziebart int'l Corp., 324 N.W.2d 732, 738 (Mich. 1982). In light of the plain language in the Endorsement, simultaneous borrowing by more than one "trucker, " does not alter the clear intent of the provision: because A&S Lines had PIP coverage on the vehicle, the Clearwater policy does not apply. Accordingly, even assuming that Tomas is an owner, Plaintiff is entitled to summary judgment.

## V. CONCLUSION

Because the Court finds that Endorsement CA 23 11 03 94 unambiguously precludes coverage Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: June 16, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and electronic filing.

s/Bernadette M. Thebolt
Case Manager